STACY WEAVER, as Administrator of the Estate of FRANKIE M. VAMPER, Plaintiff
v. SAINT JOSEPH OF THE PINES, INC., Defendant

No. COA06-1524

(Filed 20 November 2007)

**1. Pleadings— non-pleading materials—stipulation of parties to treat as pleadings—summary judgment**

Review was as if the court had granted summary judgment for defendant rather than granting motions under Rule 12(b)(6) and Rule 12(c), where the parties had stipulated that the court could treat non-pleading materials as pleadings. Matters outside the complaint are not germane to Rule 12(b)(6) and Rule 12(c), and the mandatory language of these Rules is unambiguous and leaves no room for variance in practice.

**2. Compromise and Settlement— release—action on debt— language encompassing other actions**

The unambiguous language of a release which arose from a dispute over payment for care at defendant's nursing and assisted living facility constituted a release of plaintiff's claims in this action for negligence. It is immaterial that neither the release nor the mediation settlement agreement specifically mentions this negligence and wrongful death claim; the language of the release encompasses the alleged injury.

**3. Compromise and Settlement— release—incompetency of party—ratification**

A release was enforceable despite the purported incompetency of the now-deceased plaintiff because the evidence presented by the parties establishes ratification.

**4. Compromise and Settlement— release—mutual mistake**

There was no genuine dispute of fact as to whether a release was the result of mutual mistake where the release arose from a dispute about payment for nursing home care but contained language which encompassed the alleged injury suffered by the deceased. Nothing in plaintiff's affidavit states that the deceased was mistaken in her understanding as to the content or legal effect of the release.

**5. Compromise and Settlement— release—consideration**

A release agreement was supported by valid consideration where it stated that it was in consideration of the compromise of

**WEAVER v. SAINT JOSEPH OF THE PINES, INC.**

[187 N.C. App. 198 (2007)]

disputed claims. Payments were made and claims were released and discharged.

## 6. Compromise and Settlement— release—not unconscionable

There was no evidence that a release was unconscionable. The mere fact that the deceased and her sons did not choose to have legal representation to explain the legal consequences of the release does not render it procedurally unconscionable, and the release on its face showed that plaintiffs obtained a significant financial concession from defendant.

Appeal by plaintiff from order entered 9 August 2006 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 6 June 2007.

*Bain, Buzzard & McRae, LLP, by Robert A. Buzzard, for plaintiff-appellant.*

*Van Camp, Meacham & Newman, PLLC, by Thomas M. Van Camp, for defendant-appellee.*

GEER, Judge.

Plaintiff Stacy Weaver, the administrator of the estate of Frankie M. Vamper, appeals from an order dismissing plaintiff's complaint against defendant Saint Joseph of the Pines, Inc. ("SJP") and also granting judgment on the pleadings in favor of SJP. Although the parties present this case for review under Rules 12(b)(6) and 12(c) of the North Carolina Rules of Civil Procedure, the parties and the trial court relied upon matters outside the pleadings, and, consequently, the Rules of Civil Procedure require that we decide this appeal pursuant to Rule 56.

Based upon our review of the affidavits and exhibits submitted by the parties, we hold that no genuine issue of material fact exists regarding whether a general release signed by Ms. Frankie M. Vamper bars the claims in this lawsuit. Because, as a matter of law, the release precludes this action, and plaintiff has failed to present evidence that the release is unenforceable, we hold that the trial court properly entered judgment in favor of SJP.

## Facts

On 17 May 2006, plaintiff filed a negligence and wrongful death action against SJP, a corporation that owns and runs assisted-living

and nursing-care facilities. According to the complaint, on 20 May 2003, SJP's employees transported Ms. Vamper in a van to receive dialysis treatment. While the employees were loading Ms. Vamper into the van, a piece of the mechanical wheelchair lift broke and landed on Ms. Vamper's leg. Plaintiff asserts in the complaint that Ms. Vamper suffered serious injuries from this incident, ultimately resulting in the amputation of her leg and further serving as a proximate cause of her death, nearly three years later, on 18 March 2006.

On 5 June 2006, SJP filed an answer; a motion to dismiss pursuant to N.C.R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6); and a motion for judgment on the pleadings pursuant to N.C.R. Civ. P. 12(c). In support of these motions, SJP attached various documents relating to a previous lawsuit that SJP had filed in August 2004 against Frankie Mae Vamper, Theron Junior Vamper, Sr., and Joseph Vamper.

These documents reflect that, in the prior lawsuit, SJP was attempting to recover a debt of $29,174.54 owed by Ms. Vamper and her family for care and treatment services rendered to Ms. Vamper at SJP's facility. When the Vampers failed to answer the August 2004 complaint, the Clerk of Superior Court in Moore County entered default against them on 22 November 2004. SJP subsequently filed a motion for default judgment in the amount of the debt.

In June 2005, however, the parties held a mediation conference, as a result of which they entered into a "Settlement Agreement and Mutual Release" ("Release"), one of the documents that SJP attached to its answer in this case. Under the terms of the Release, the Vampers agreed to pay SJP a sum of $6,000.00, in 24 monthly payments of $250.00, as "full and final settlement of the pending lawsuits." SJP, in return, agreed to dismiss with prejudice its claims against the Vampers.

Most pertinent to this case, the Release contained the following provision:

4. [THE VAMPERS] do for themselves, their heirs, successors and assigns, hereby RELEASE, ACQUIT, and FOREVER DISCHARGE ST. JOSEPH OF THE PINES, INC., ["SJP"] its successors and assigns, agents, servants, employees, and corporate, personal, and litigation attorneys, of and from any and all claims, actions or causes of action, demands, damages, costs, judgments, expenses, liabilities, attorneys' fees, and legal costs, whether known or unknown, whether in law or in equity, whether in tort

or in contract, of any kind or character, which they now have, or might otherwise have, against the [sic] SJP, arising out of or related to the care and treatment of Frankie Mae Vamper, all to the end that all claims or matters that are, or might be in controversy between the Vampers and SJP are forever put to rest, relating to the matters and things alleged in the pending lawsuits, it being the clear intention to forever discharge and release all past and present claims against SJP from all consequences resulting or potentially to result from the matters and things set forth in the pending lawsuits or the care and treatment of Frankie Mae Vamper while a resident at the SJP facility.

The final page of the Release shows the notarized signatures of Frankie Mae Vamper, Theron Junior Vamper, Sr., and Joseph E. Vamper.

In this case, after SJP submitted the Release to the trial court in conjunction with its answer and Rule 12 motions, plaintiff gave notice of his intent to take the deposition of SJP's counsel, Thomas M. Van Camp. Apparently, Thomas Van Camp also represented SJP in the mediation of the debt claims and was instrumental in preparing the Release. Plaintiff also filed a motion to continue the hearing on SJP's Rule 12 motions, asserting that "depositions and other discovery [are] necessary in order for Plaintiff to respond to Defendant's motion to dismiss."

Five days later, SJP filed an objection to plaintiff's motion to continue and a motion for protective order barring plaintiff from taking the deposition of Thomas Van Camp. SJP asserted:

It would be appropriate to address whether a deposition of defendant's counsel of record should be allowed only after the pending Motion to Dismiss and Motion for Judgment on the Pleadings have been ruled upon. If, and only if, the Court determines that the language contained in the Settlement Agreement and Mutual Release is ambiguous, will it be necessary to address the appropriateness of taking the deposition of defendant's counsel of record.

SJP then filed an affidavit of Deborah T. Scherer, SJP accounts receivable manager. As attachments to the Scherer affidavit, SJP included a computer-generated "payment history" for the Frankie M. Vamper account and a copy of the obituary of Frankie M. Vamper. Plaintiff then filed a "Reply to Affirmative Defense," attaching an affi-

davit from Joseph Vamper, Ms. Vamper's son, a "Memorandum of Mediated Settlement," and a copy of the Release.

Following a hearing on 6 July 2006, Judge James M. Webb orally granted SJP's motion for protective order, stating "the protective order prohibits the taking of the deposition of Mr. Thomas M. Van Camp, defendant's counsel of record, until such time as the defendant's motion to dismiss and motion for judgment on the pleadings have been heard and ruled upon by the Court." The trial court then ordered that "defendant's motion to dismiss and motion for judgment on the pleadings [be] continued for hearing" until 31 July 2006.

In a joint letter, dated 17 July 2006 and filed with the trial court on 31 July 2006, the parties explained to the judge that they had entered into the following agreement and "stipulations":

> After discussing this matter . . . we have agreed that the Court can rule upon defendant's Motion for Judgment on the Pleadings and/or Motion to Dismiss without further argument by the parties. The documents that are currently on file, and which the parties stipulate shall be regarded by the court as pleadings in connection with ruling on the motions include: 1) the Complaint and any attachments; 2) the Answer and any attachments; 3) [plaintiff]'s Reply with attachments; and 4) the Scherer affidavit. Both parties further stipulate that the motions shall not be converted into motions for summary judgment.

On 9 August 2006, the trial court entered a written order granting SJP's motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) and granting judgment on the pleadings to defendant pursuant to Rule 12(c). Plaintiff gave timely notice of appeal to this Court.

Conversion of Rule 12(b)(6) and Rule 12(c)
Motions into Summary Judgment Motion

[1] As an initial matter, we must confront the awkward procedural posture of this case, a circumstance stemming from the parties' "stipulations" to the trial court. Here, the court acknowledged that the parties "stipulated in writing that the Court shall consider as pleadings in ruling upon the defendant's motions (1) the Complaint and any attachments; (2) the Answer and any attachments; (3) the [plaintiff's] Reply with attachments; and (4) the Scherer affidavit . . . ." The court further acknowledged that the parties "stipulat[ed] that the defend-

ant's motions shall not be converted into a motion for summary judgment" and that the letter containing these stipulations "has been made part of the court file . . . ."

Following these acknowledgments, the court proceeded to grant SJP's Rule 12(b)(6) and Rule 12(c) motions.[1] It is, therefore, apparent that the court, pursuant to the parties' joint "stipulations," treated the various non-pleading materials as pleadings and decided not to convert defendant's motions into one for summary judgment under Rule 56. This approach—although invited by the parties—cannot be reconciled with the Rules of Civil Procedure.

We first note that a Rule 12(c) motion may be filed only "[a]fter the pleadings are closed but within such time as not to delay the trial . . . ." N.C.R. Civ. P. 12(c). Thus, contrary to what was done here, a Rule 12(c) motion cannot be filed simultaneously with an answer. Indeed, this Court has recognized that "while a motion under Rule 12(b)(6) must be made *prior to or contemporaneously with* the filing of the responsive pleading," a distinguishing feature of a Rule 12(c) motion is that it "is properly made *after* the pleadings are closed . . . ." *Robertson v. Boyd*, 88 N.C. App. 437, 440, 363 S.E.2d 672, 675 (1988). *See also Yancey v. Watkins*, 12 N.C. App. 140, 141, 182 S.E.2d 605, 606 (1971) (holding Rule 12(c) motion premature where: "At the time defendants moved for judgment on the pleadings, the pleadings were not closed. Defendants had not filed answer. Plaintiff had not had opportunity to file a reply . . . ."); 1 G. Gray Wilson, *North Carolina Civil Procedure* § 12-13, at 237 (2d ed. 1995) ("Unlike other Rule 12 defenses, a motion for judgment on the pleadings cannot be asserted until 'after the pleadings are closed.' ").

With respect to SJP's Rule 12(b)(6) motion, "[t]he only purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleading against which it is directed." *White v. White*, 296 N.C. 661, 667, 252 S.E.2d 698, 702 (1979). As a general proposition, therefore, matters outside the complaint are not germane to a Rule 12(b)(6) motion. Indeed, as N.C.R. Civ. P. 12(b) makes clear, a Rule 12(b)(6) motion is converted to one for summary judgment if "matters outside the pleading are presented to and not excluded by the court":

---

1. Although the trial court disposed of this case pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(6), and 12(c), neither party has referenced Rules 12(b)(1) and 12(b)(2) as bases for the order, and we fail to see how Rules 12(b)(1) and 12(b)(2) are pertinent to the order of the trial court. Accordingly, we address only the propriety of the trial court's decision under Rules 12(b)(6) and 12(c).

> If, on a motion asserting the defense numbered (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, *the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56*, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(Emphasis added.) This rule applies equally to Rule 12(c) motions. *See* N.C.R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").

The mandatory language of these Rules is unambiguous and leaves no room for variance in practice. *See Minor v. Minor*, 70 N.C. App. 76, 78, 318 S.E.2d 865, 867 (holding with respect to Rule 12(c) motions that "[n]o evidence is to be heard, and the trial judge is not to consider statements of fact in the briefs of the parties or the testimony of allegations by the parties in different proceedings"), *disc. review denied*, 312 N.C. 495, 322 S.E.2d 558 (1984).

If, however, documents are attached to and incorporated within a complaint, they become part of the complaint. They may, therefore, be considered in connection with a Rule 12(b)(6) or 12(c) motion without converting it into a motion for summary judgment. *See Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 642, 599 S.E.2d 410, 412 (2004) ("Since the exhibits to the complaint were expressly incorporated by reference in the complaint, they were properly considered in connection with the motion to dismiss as part of the pleadings."), *disc. review denied*, 359 N.C. 410, 612 S.E.2d 318, *aff'd per curiam*, 360 N.C. 167, 622 S.E.2d 495 (2005). Further, this Court has held "that when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

Here, both parties presented to the trial court and the court considered numerous "matters outside the pleading," including the attachments to SJP's answer; plaintiff's reply to SJP's answer with attachments; and the Scherer affidavit filed by SJP. None of these documents were attached to the complaint or were the subject of plaintiff's complaint. Accordingly, under Rule 12(b)(6) and 12(c), if

the court considered those documents in reaching its decision—as the order below indicates—SJP's motion could not be disposed of under Rule 12(b)(6) or Rule 12(c), but rather was converted into a motion for summary judgment under Rule 56.

The parties attempted to circumvent this principle by filing a letter with the court "stipulat[ing] that the motions shall not be converted into motions for summary judgment" based on a further stipulation that the various documents supplied to the court should be deemed "pleadings." While parties may agree to streamline procedures such as by asking a trial court to rule based on stipulated facts, we do not understand precisely how the parties expected the trial court to proceed in this case.

The parties apparently intended for the trial court to consider the attachments to SJP's answer and the Scherer affidavit—none of which materials are relevant under Rule 12(b)(6) or Rule 12(c). *See, e.g., Peace River Elec. Coop., Inc. v. Ward Transformer Co.*, 116 N.C. App. 493, 510, 449 S.E.2d 202, 214 (1994) ("[A] party raising a motion under Rule 12(c) simultaneously admits the truth of all well-pleaded factual allegations in the opposing party's pleading and the untruth of its own allegations insofar as the latter controvert or conflict with the former."), *disc. review denied*, 339 N.C. 739, 454 S.E.2d 655 (1995); *Robertson*, 88 N.C. App. at 440, 363 S.E.2d at 675 ("Both a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim upon which relief can be granted should be granted *when a complaint fails to allege facts sufficient to state a cause of action or pleads facts which deny the right to any relief.*" (emphasis added)).

Indeed, this Court has specifically held that a document attached to the moving party's pleading may not be considered in connection with a Rule 12(c) motion unless the non-moving party has made admissions regarding the document. Thus, in *George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 486, 393 S.E.2d 580, 583 (1990), *disc. review denied*, 328 N.C. 571, 403 S.E.2d 511 (1991), this Court, in addressing a plaintiff's motion for judgment on the pleadings, held that a memo attached to the plaintiff's reply to defendant's counterclaim "must be disregarded" when it was "not the subject of any admission" by the non-moving defendant. Thus, under Rule 12(b)(6) and Rule 12(c), there is no basis for considering SJP's materials despite the stipulation.

Further, the parties also intended that the trial court consider plaintiff's "reply" to SJP's answer. Yet, since the "reply" did not ad-

dress a counterclaim or contributory negligence and the court had not ordered a reply, it was not authorized under N.C.R. Civ. P. 7(a) (specifying the permissible pleadings in a civil case and providing that "[n]o other pleading shall be allowed except that the court may order a reply to an answer or a third-party answer"). Even if, however, we deemed the "reply" to be part of the complaint, we still would not be complying with the parties' stipulation since they did not intend for the trial court to consider plaintiff's "reply" in isolation from SJP's materials.

We cannot devise a means of giving full effect to the parties' stipulation without also doing insult to the Rules of Civil Procedure and the applicable standards of review. *See Cline v. Seagle*, 27 N.C. App. 200, 201, 218 S.E.2d 480, 481 (1975) (holding that even when parties consent to resolving a case on a motion for judgment on the pleadings, "judgment on the pleadings [becomes] inappropriate in spite of the consent by the attorneys" because "[t]he pleadings raise contradicting assertions"). We will, therefore, review this case as if the trial court had granted summary judgment to SJP. *See Helms v. Holland*, 124 N.C. App. 629, 633, 478 S.E.2d 513, 516 (1996) ("Because matters outside the pleadings were considered by the court in reaching its decision on the judgment on the pleadings, the motion will be treated as if it were a motion for summary judgment."). We note that based upon our review of the record, we do not believe that the discovery sought by plaintiff—and deferred—was material to the issues resulting in judgment for SJP.

### SJP's Entitlement to Judgment

**[2]** "Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved, thereby entitling the movant to judgment as a matter of law." *Northington v. Michelotti*, 121 N.C. App. 180, 182, 464 S.E.2d 711, 713 (1995). The party moving for summary judgment has the burden of establishing the lack of any triable issues. *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that [it] will be able to make out at least a prima facie case at trial." *Id.*

In the trial court, SJP supported its motions by arguing that plaintiff's lawsuit is barred by the language of the Release. Plaintiff has responded that the underlying tort claims are not barred, as a matter of law, because the language of the Release establishes that the par-

ties never intended to preclude plaintiff's current claims. In particular, plaintiff asserts that the Release's repeated mention of the "pending lawsuits" (i.e., the debt collection matter) and the absence of any reference to "negligence" or "personal injury" claims, indicates that Ms. Vamper's tort claims "were not within the contemplation of the parties, and is strong evidence that Mrs. Vamper did not intend to discharge, abandon, or relinquish her embryonic claim at the time she signed the releases."

We acknowledge that the apparent purpose of the parties' stipulation regarding the inapplicability of Rule 56 was intended to defer the need for a ruling on whether plaintiff could take a deposition of SJP's counsel regarding the intent of the parties in this Release. We agree, however, with SJP that the unambiguous language of the Release constitutes a release of plaintiff's claims in this action and, therefore, parol evidence regarding the parties' intent is immaterial. *See First Citizens Bank & Trust Co. v. 4325 Park Rd. Assocs.*, 133 N.C. App. 153, 156, 515 S.E.2d 51, 54 ("Parol evidence as to the parties' intent and other extrinsic matters will not be considered if the language of the contract is not susceptible to differing interpretations."), *disc. review denied*, 350 N.C. 829, 539 S.E.2d 284 (1999).

Since releases are contractual in nature, we apply the principles governing interpretation of contracts when construing a release. *Chemimetals Processing, Inc. v. Schrimsher*, 140 N.C. App. 135, 138, 535 S.E.2d 594, 596 (2000). Under North Carolina law, "[w]hen the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court[,] and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Piedmont Bank & Trust Co. v. Stevenson*, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52 (internal citations omitted), *aff'd per curiam*, 317 N.C. 330, 344 S.E.2d 788 (1986). Thus, "[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (internal citations omitted).

Contrary to plaintiff's assertion, we see no basis to construe the Release as being limited in its coverage to only the then-pending debt collection matter. Frankie Vamper and her family released defendant "from any and all claims, actions or causes of action, . . ., liabilities, . . . whether known or unknown, whether in law or in equity, whether in tort or in contract, of any kind or character, which they now have, or might otherwise have, against the [sic] SJP, arising

out of or related to the care and treatment of Frankie Mae Vamper, all to the end that all claims or matters that are, or might be in controversy between the Vampers and SJP are forever put to rest . . . ." Further, the Release announces the "clear intention" of the parties "to forever discharge and release all past and present claims against SJP from all consequences resulting or potentially to result from the matters and things set forth in the pending lawsuits *or the care and treatment of Frankie Mae Vamper while a resident at [defendant's] facility*." (Emphasis added.)

Because the alleged incident giving rise to plaintiff's claims related to "the care and treatment of Frankie Mae Vamper" prior to the signing of the Release, we hold that the plain text of the Release unambiguously relieves defendant from any liability related to that incident. *See Sims v. Gernandt*, 341 N.C. 162, 165, 459 S.E.2d 258, 260 (1995) ("The document clearly and unambiguously informs the reader that it is a release by the signatory of 'any responsibility [of defendant] whatsoever, of any kind for my 85 Honda-Civic.' Any responsibility of defendant to plaintiff was already in existence at the time plaintiff signed the document and was therefore released by that document.").[2]

It is immaterial that neither the Release nor the Mediation Settlement Agreement specifically mentions the claim at issue in this case or that the possible existence of this claim never arose during the mediation. As our Supreme Court has held: " '[t]he language in a release may be broad enough to cover all demands and rights to demand or possible causes of action, a complete discharge of liability from one to another, *whether or not the various demands or claims have been discussed or mentioned, and whether or not the possible claims are all known.*' " *Merrimon v. Postal Telegraph-Cable Co.*, 207 N.C. 101, 105-06, 176 S.E. 246, 248 (1934) (quoting *Houston v. Trower*, 297 F. 558, 561 (8th Cir. 1924)) (emphasis added). *See also Fin. Servs. of Raleigh, Inc. v. Barefoot*, 163 N.C. App. 387, 394-95, 594 S.E.2d 37, 42-43 (2004) (after noting "[o]ur courts have . . . long recognized that parties may release existing but unknown claims," court held that "when the parties stated that they were releasing 'all claims

---

2. Plaintiff's reliance on *Travis v. Knob Creek, Inc.*, 321 N.C. 279, 362 S.E.2d 277 (1987), is misplaced. In *Travis*, the plaintiff's claim for wrongful discharge arose when he was fired, long *after* he had signed a release. Here, the cause of action arose when Ms. Vamper was injured in 2003, while the Release was signed in 2005. The appeal does not, therefore, involve the question presented in *Travis*: whether a release encompassed future claims. *Id.* at 283, 362 S.E.2d at 279.

of any kind,' we must construe the release to mean precisely that: an intent to release all claims of any kind in existence").

In short, the language of the Release encompasses the alleged injury sustained by Ms. Vamper in May 2003 and ordinarily would preclude this lawsuit. Plaintiff, however, further contends that material issues of fact exist as to the enforceability of the Release, including: (1) whether Frankie Vamper was incompetent at the time she signed the Release; (2) whether the Release resulted from a mutual mistake of the parties; (3) whether the Release was supported by valid consideration; and (4) whether the Release represents an unconscionable bargain. We address each in turn.

**[3]** Regarding Ms. Vamper's incompetency, plaintiff refers to the affidavit of Joseph Vamper, Ms. Vamper's son. That affidavit states that the deceased Ms. Vamper "suffered from various physical, emotional and mental illnesses which impaired her cognitive abilities and competence" and "was not competent to enter into any form of legal agreement in that she did not have the mental faculties to understand the nature of her actions or to conduct her affairs."

Our Supreme Court has held that "[a]n agreement entered into by a person who is mentally incompetent, but who has not been formally so adjudicated, is voidable and not void." *Walker v. McLaurin*, 227 N.C. 53, 55, 40 S.E.2d 455, 457 (1946). *See also Hedgepeth v. Home Sav. & Loan Ass'n*, 87 N.C. App. 610, 611, 361 S.E.2d 888, 889 (1987) ("It is well established in our state that a contract executed by an incompetent prior to being so adjudicated, is voidable and not void *ab initio*."). In accordance with this principle, "[w]here an incompetent person purports to enter into a contract, after his death his heirs may ratify the agreement or they may disaffirm it." *Walker*, 227 N.C. at 55, 40 S.E.2d at 457. *See also* 5 Samuel Williston, *A Treatise on the Law of Contracts* § 10:5, at 253-54 (Richard A. Lord ed., 4th ed. 1993) ("It has been held that the representative of an insane person may ratify a bargain made by him after death or that he may disaffirm it. The same is generally true of his heirs.").

In *Walker*, the defendants presented evidence that their deceased father "did not have sufficient mental capacity" to enter into a valid lease and option-to-purchase agreement with the plaintiff. 227 N.C. at 55, 40 S.E.2d at 457. Even though the defendants' father died during the lease term, there was evidence showing that his heirs continued to accept rent payments under the agreement after the father's death. *Id.* The Court held that the defendants "had the right to disaffirm the

agreement immediately upon [their father's] death," but if "they elected to accept rents according to the terms of the lease until its expiration, such conduct would constitute a ratification of the contract." *Id.*

The rule in *Walker* necessarily applies here. Although plaintiff's evidence, in the form of Joseph Vamper's affidavit, may set forth evidence that Ms. Vamper was incompetent at the time of the signing of the Release, defendant has presented undisputed evidence of ratification of the Release. The Scherer affidavit, in conjunction with the attached "payment history" and obituary, show that even after Ms. Vamper's death, her heirs or other representatives continued to make monthly payments of $250.00 to SJP, thereby affirming the validity of the agreement. *See Ridings v. Ridings*, 55 N.C. App. 630, 632, 286 S.E.2d 614, 616 (plaintiff ratified transaction procured by undue influence once influence terminated by "acknowledg[ing] the validity of the agreement" by continuing to make payment under the agreement and conveying title to a car pursuant to the agreement), *disc. review denied*, 305 N.C. 586, 292 S.E.2d 571 (1982); *Bobby Floars Toyota, Inc. v. Smith*, 48 N.C. App. 580, 584, 269 S.E.2d 320, 322-23 (1980) (defendant ratified contract entered into when he was a minor by continuing to make payments under contract after becoming age 18). Since the evidence presented by the parties establishes ratification, we hold that Ms. Vamper's purported incompetency does not render the Release unenforceable.

[4] Next, plaintiff contends a genuine factual dispute exists as to whether the Release was the result of a mutual mistake of the parties. According to plaintiff, a mistake is evident in the fact that the parties never had any overt communications about whether the Release would bar plaintiff's current claims. On this issue, the Joseph Vamper affidavit tends to show that "the mediation related solely to payment for [Ms. Vamper's] stay and care at Saint Joseph of the Pines" and that "at the mediation of the collection matters . . . there was no intention, discussion, mention, negotiation or other communication of any kind of any claim, actions, facts or releases regarding the incident which is the subject of the above-captioned action for personal injury." (Emphasis added). Plaintiff thus suggests that, if the Release's plain language acts as a bar to plaintiff's current claims, then evidence that the contracting parties actually intended the Release to mean something different constitutes evidence of mutual mistake.

A release may be avoided upon evidence that it was executed as a result of a mutual mistake. *Best v. Ford Motor Co.*, 148 N.C. App. 42,

45, 557 S.E.2d 163, 165 (2001), *aff'd per curiam*, 355 N.C. 486, 562 S.E.2d 419 (2002). " 'Mutual mistake is a mistake common to all the parties to a written instrument . . . which usually relates to a mistake concerning its contents or its legal effect.' " *Van Keuren v. Little*, 165 N.C. App. 244, 247, 598 S.E.2d 168, 170 (quoting *Best*, 148 N.C. App. at 46-47, 557 S.E.2d at 166), *disc. review denied*, 359 N.C. 197, 608 S.E.2d 328 (2004). This Court has held that in order "[t]o raise a genuine issue of material fact, plaintiff must allege specific facts upon which [he] intends to rely in establishing mutual mistake." *Best*, 148 N.C. App. at 47, 557 S.E.2d at 166-67.

In *Best*, the plaintiff submitted an affidavit stating that she never intended to release certain entities and that if the release was construed to apply to those entities, it was the result of a mutual mistake. *Id.*, 557 S.E.2d at 166. Apart from expressions of her intent, the plaintiff, in opposition to summary judgment, submitted no other evidence of mutual mistake, such as "any conversation contemporaneous with the signing of the Release that would indicate mutual mistake of fact." *Id.* at 48, 557 S.E.2d at 166. This Court held that this evidence was "insufficient to produce a forecast of evidence demonstrating specific facts to show that plaintiff could establish a prima facie case at trial" and thus the trial court properly granted summary judgment based on the release. *Id.* at 49, 557 S.E.2d at 167.

Similarly, in *Van Keuren*, this Court also held that the plaintiff's affidavit failed to establish a prima facie case of mutual mistake when it stated only that it was the plaintiff's "belief" that the parties, in preparing the settlement documents, had forgotten about the potential uninsured claim and that the plaintiff, when accepting the settlement, still intended to pursue an uninsured claim. 165 N.C. App. at 248, 598 S.E.2d at 171. This Court concluded: "These conclusory statements fail to show specific facts of mutual mistake, lack[] particularity and [are] insufficient to withstand a motion for summary judgment." *Id.* (internal quotation marks omitted).

The evidence presented in this case does not rise even to the level found insufficient in *Best* and *Van Keuren*. In support of the mutual mistake argument, the Joseph Vamper affidavit simply states that the focus of the mediation was to resolve the debt collection matter and that the mediation did not specifically address plaintiff's current claims. The affidavit adds that the Memorandum of Mediated Settlement was entered into at the end of the mediation and "illustrat[ed] the agreement reached at mediation." The attached Memorandum of Mediated Settlement agreement, however, specifies

that "[p]arties will sign settlement agreement & releases . . . ." The affidavit then concludes by stating that the Release was not discussed with Ms. Vamper by Joseph Vamper or anyone else.

Nothing in the Joseph Vamper affidavit states that Ms. Vamper was mistaken in her understanding as to the content or legal effect of the Release that was also referenced generally in the Memorandum of Mediated Settlement. Indeed, in contrast to *Van Keuren* or *Best*, there is nothing in the Joseph Vamper affidavit specifically denying that the Release embodies the intent of the parties at the time of signing. In fact, the Joseph Vamper affidavit is completely devoid of any assertion that either party in this case intended the Release to have a different meaning than its plain meaning. Plaintiff, therefore, has fallen well short of meeting his burden of "stat[ing] *with particularity* the circumstances constituting mistake . . . ." *Best*, 148 N.C. App. at 47, 557 S.E.2d at 166 (emphasis added).

**[5]** Plaintiff's remaining contentions are addressed by the Release itself. We find it readily apparent that the Release agreement was supported by valid consideration. The Release states that "*in consideration of the compromise of disputed claims*, the parties hereto do covenant and agree as follows . . . ." (Emphasis added.) Defendant agreed to forego a $29,174.54 claim against the Vampers and also to "forever discharge and release all past and present claims against the Vampers from all consequences resulting or potentially to result from the matters and things set forth in the pending lawsuits." In return, the Vampers agreed to pay defendant $6,000.00 and also to "forever discharge and release all past and present claims against SJP . . . ." Thus, the Release was supported by valid consideration. *See George Shinn Sports*, 99 N.C. App. at 488, 393 S.E.2d at 584 (holding that party's contention that issue of fact existed regarding whether letter agreement was supported by consideration was meritless when "[t]he face of the document reveals mutual promises and benefits accruing to the parties").

**[6]** Finally, we see no evidence that the Release was an unconscionable contract. For a court to conclude that a contract is unconscionable, the court must determine "that the agreement is both substantively and procedurally unconscionable." *King v. King*, 114 N.C. App. 454, 458, 442 S.E.2d 154, 157 (1994). The question of unconscionability is determined as of the date the contract was executed. *Id.* Procedural unconscionability involves " 'bargaining naughtiness' " in the formation of the contract, such as "fraud, coercion, undue influence, misrepresentation, [or] inadequate disclosure." *Id.* (quot-

ing *Rite Color Chemical Co. v. Velvet Textile Co.*, 105 N.C. App. 14, 20, 411 S.E.2d 645, 648 (1992)). Substantive unconscionability involves an "inequality of the bargain" that is " 'so manifest as to shock the judgment of a person of common sense, and . . . the terms . . . so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.' " *Id.* (quoting *Brenner v. Little Red Sch. House, Ltd.*, 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981)).

In this case, plaintiff has presented no evidence of procedural unconscionability at the time of the execution of the contract. The mere fact that Ms. Vamper and her sons did not choose to have legal representation to explain the legal consequences of the Release does not render the Release procedurally unconscionable. As this Court recently reiterated: "Long ago, our Supreme Court stated, 'the law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so.' " *Raper v. Oliver House, LLC*, 180 N.C. App. 414, 421, 637 S.E.2d 551, 555 (2006) (quoting *Leonard v. Southern Power Co.*, 155 N.C. 10, 14, 70 S.E. 1061, 1063 (1911)).

With respect to substantive unconscionability, the Release, on its face, shows that the Vamper family obtained a significant financial concession from defendant as a result of the mediated settlement—defendant agreed to accept roughly $23,000.00 less than the debt originally claimed to be owed by the Vampers. In exchange for this concession, the Vamper family agreed to relinquish all existing claims, known or unknown, relating to the care and treatment of Frankie Vamper. Plaintiff has not shown that this bargain was so manifestly unequal as to shock the conscience or that no reasonable person would offer or accept the terms of the Release. Plaintiff has, therefore, failed to demonstrate that the Release is unconscionable.

In summary, we conclude that the plain language of the Release bars this lawsuit. Further, plaintiff has failed to present evidence raising an issue of fact as to the enforceability of the Release. As a result, we hold that defendant was properly entitled to judgment as a matter of law, and the order below should be affirmed.

Affirmed.

Judges CALABRIA and JACKSON concur.