IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-31

Filed: 6 September 2016

Dare County, No. 14 CVS 325

EMERALD PORTFOLIO, LLC, Plaintiff,

v.

OUTER BANKS/KINNAKEET ASSOCIATES, LLC, RAY HOLLOWELL Individually, and DONNA HOLLOWELL Individually, Defendants.

Appeal by defendants Outer Banks/Kinnakeet Associates, LLC and Ray Hollowell from orders entered 27 August 2015 by Judge Cy A. Grant in Dare County Superior Court. Heard in the Court of Appeals 26 May 2016.

> *Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Robert A. Mays, for plaintiff-appellee.*

> *Phillip H. Hayes for defendants-appellants Outer Banks/Kinnakeet Associates, LLC and Ray Hollowell.*

ZACHARY, Judge.

Where the assignee of a note lacked possession of the note and did not satisfy the statutory provisions for enforcement of a lost note, the trial court erred in granting summary judgment in favor of the assignee. Where there was no genuine issue of material fact as to obligor's contractual debt pursuant to the guaranty agreement, and the agreement was not unconscionable, the trial court did not err in granting summary judgment in favor of the assignee-obligee of the guaranty agreement.

## I. Factual and Procedural Background

On 30 August 2006, Outer Banks/Kinnakeet Associates, LLC, (OBKA) executed a promissory note in favor of First South Bank (FSB) in the amount of $3,025,500. Ray Hollowell, in his capacity as OBKA's manager, signed the note on behalf of OBKA. On that same day, Ray Hollowell and his spouse, Donna Hollowell (collectively, the Hollowells) each signed separate, but identical, commercial guaranties imposing personal liability on them under contract for OBKA's payment of the note. On 24 December 2008, 23 January 2009, and 18 March 2010, FSB and OBKA entered into agreements modifying the terms of the original note.

In February of 2013, FSB sold the loan to Emerald Portfolio, LLC (Emerald). On 23 June 2014, Emerald, as assignee of FSB, filed a complaint against OBKA and the Hollowells alleging a default pursuant to the terms of the note, as modified, along with the guaranties, and seeking to recover the unpaid balance on the note. Included in an attachment to the complaint was an affidavit, signed by FSB's senior vice president, alleging that FSB was the lawful owner and payee of the note, that the note could not be located, and that the note had been endorsed to Emerald as of 21 February 2013. This attachment also contained a copy of the note.

On 5 August 2014, the Hollowells filed an answer and counterclaim, raising the defenses of credit and offset and unconscionability, and counterclaiming for unfair and deceptive trade practices. The answer admitted the existence of the note and

guaranties. On 11 August 2014, Emerald filed an answer to the Hollowells' counterclaim, together with a motion to dismiss. On 15 September 2014, Emerald also filed a motion for summary judgment or judgment on the pleadings with respect to the Hollowells.

On 18 September 2014, Emerald filed a motion for entry of default against OBKA, alleging that it had failed to answer. Default was entered by the Clerk of Court of Dare County that same day. Also that same day, the Clerk of Court entered default judgment against OBKA. On 3 October 2014, OBKA moved to set aside entry of default and default judgment. This motion was granted in open court on 6 October 2014, and rendered in writing on 27 July 2015.

On 2 October 2014, the Hollowells filed a motion to amend their answer. This motion was granted in open court on 6 October 2014, and rendered in writing on 27 July 2015.

On 3 November 2014, the trial court entered an order on Emerald's motion for summary judgment or judgment on the pleadings and dismissal. The trial court noted that Emerald's motion for summary judgment or judgment on the pleadings was withdrawn without prejudice, and dismissed the Hollowells' counterclaim with prejudice.

On 14 November 2014, OBKA filed its answer, alleging credit and offset, and contending that Emerald was not entitled to enforce the lost note. On 11 May 2015,

Emerald moved to strike OBKA's untimely answer and for summary judgment against OBKA and the Hollowells. On 20 July 2015, the Hollowells and OBKA collectively filed a motion for summary judgment.

On 19 August 2015, Emerald filed a motion seeking an order prohibiting the Hollowells and OBKA from participating in any voluntary transfer of the subject property without prior court approval. On 27 August 2015, the trial court granted this motion, ordering that other than payment of ordinary expenses the Hollowells and OBKA were not to participate in any voluntary transfer of the subject property without court approval.

On 3 September 2015, the trial court entered an order granting Emerald's motion for summary judgment as to appellants, and denying the Hollowells' and OBKA's motion for summary judgment. This order also awarded Emerald the monetary relief sought from appellants and certified the order pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. The order further found that Donna Hollowell was a guarantor on the commercial guaranty, and was jointly and severally liable to Emerald under the note "unless she can prove an affirmative defense under the Equal Credit Opportunity Act" at trial of this matter.

From, *inter alia*, the order granting Emerald's motion for summary judgment, OBKA and Ray Hollowell (appellants) appeal.

## II. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

### III. Summary Judgment

In their various arguments, appellants contend that the trial court erred in granting summary judgment against appellants in favor of Emerald, and denying summary judgment in favor of appellants. We agree in part and disagree in part.

### A. OBKA and the Lost Note

First, appellants maintain that the trial court erred in entering summary judgment in favor of Emerald against OBKA because FSB could not locate the promissory note at the time it was assigned to Emerald.

Our statutes provide an avenue for recovery on a lost instrument. Specifically:

> A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

N.C. Gen. Stat. § 25-3-309(a) (2015). In other words, appellants contend that Emerald was entitled to enforce the note only if (i) Emerald possessed and was able to enforce the note at the time that it was lost, (ii) the loss was not the result of a transfer or lawful seizure, and (iii) the note could not reasonably be obtained due to loss, destruction, or wrongful taking. Because FSB possessed the note and had lost it at the time that it was assigned to Emerald, appellants assert that the first prong of this analysis fails.

In construing this statute, we find it helpful to compare it with the language of the Uniform Commercial Code (UCC), and to contrast where the two diverge. A previous version of UCC § 3-309, in effect when N.C. Gen. Stat. § 25-3-309 was enacted, was identical to the North Carolina statute. However, that UCC provision has since been amended, as follows:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if:
>
> (1) the person seeking to enforce the instrument:
>
> (A) was entitled to enforce the instrument when loss of possession occurred; or
>
> (B) has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;
>
> (2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and
>
> (3) the person cannot reasonably obtain possession of the

> instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

UCC § 3-309 (2002). The language in (a)(1)(B) marks a clear distinction between the two, in that the amended UCC provision allows a party not in possession of an instrument to enforce it if ownership was acquired from someone with a right to enforce the instrument.

There is no question in the instant case that FSB had a right to enforce the note under both the North Carolina statute and the UCC. FSB was in possession of the instrument when it was lost, the loss was not a result of a transfer or lawful taking, and possession could not thereafter reasonably be obtained. Moreover, under the revised UCC provision, Emerald would be able to enforce the note as well, notwithstanding its lack of possession, due to "directly . . . acquir[ing] ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred[.]" UCC § 3-309(a)(1)(B).

However, Emerald's enforcement rights are not determined by the UCC, but by North Carolina statute. Pursuant to the provisions of N.C. Gen. Stat. § 25-3-309, Emerald is not entitled to enforce the note. *See, e.g., In re Patterson*, 2012 WL 5906865 (Bankr. W.D.N.C. Nov. 26, 2012). This statute is current; it has not been revised since 1995. Our legislature could have revised it to coincide with the UCC revision in 2002, but it did not do so. We must conclude from this distinction that our

legislature intended to exclude the additional language of the UCC, and as such intended not to provide this avenue of recovery to parties not in possession of the relevant instrument.

Accordingly, we hold that where a party who would otherwise have a right to enforce a lost note under N.C. Gen. Stat. § 25-3-309 subsequently assigns that note, the assignee does not acquire the right to enforce the note unless the assignee is in actual possession of the note. As the note in the instant case remains missing, we hold that Emerald lacked standing to enforce it against OBKA. The trial court erred as a matter of law in granting summary judgment in favor of Emerald against OBKA.

### B. The Hollowells and the Guaranty

Next, appellants contend that the trial court erred in entering summary judgment in favor of Emerald against Ray Hollowell because he could not be held liable as a guarantor if the note itself could not be enforced.

This argument is flawed. "North Carolina . . . recognizes that the obligation of the guarantor and that of the maker [of a note], while often coextensive are, nonetheless, separate and distinct." *EAC Credit Corp. v. Wilson*, 12 N.C. App. 481, 485, 183 S.E.2d 859, 862 (1971), *aff'd,* 281 N.C. 140, 187 S.E.2d 752 (1972). "A guarantor's liability depends on the terms of the contract as construed by the general rules of contract construction." *Carolina Place Joint Venture v. Flamers Charburgers, Inc.*, 145 N.C. App. 696, 698, 551 S.E.2d 569, 571 (2001). When a note is transferred,

no separate transfer of the guaranty is required; however, this does not mean that a guaranty cannot exist in the absence of a note. A guaranty is an obligation in contract, and irrespective of the status of the note, may be enforced in contract. *See generally First Am. Sav. Bank, F.S.B., v. Adams*, 87 N.C. App. 226, 360 S.E.2d 490 (1987). In *First American*, the defendants were guarantors on a note held by the plaintiff. The note secured the debt of a corporation wholly owned by the defendants. The defendants contended that they were discharged from their obligations as guarantors by reason of the plaintiff's "unjustified impairment of the collateral securing the loan." *Id.* at 231, 360 S.E.2d at 494. We noted, however, that the defendants enjoyed close ties with the debtor corporation, and that even if the collateral were impaired, the guaranty would remain enforceable. *Id.* at 232, 360 S.E.2d at 494-95.

In the instant case, as in *First American*, the Hollowells are closely tied to the debtor corporation OBKA, being its sole members and owners. Although appellants challenge the note itself rather than the impairment of the collateral, both arguments go to the enforceability of the instrument. We therefore find the reasoning in *First American*, that the guaranty may be enforced even if circumstances render the instrument unenforceable, applicable to this case.

Moreover, under the express terms of the guaranty, Ray Hollowell agreed to waive many defenses to enforcement, in pertinent part as follows:

> Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of . . . (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full legal tender, of the indebtedness; (D) any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness; . . . or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness.

Accordingly, the guaranty executed by Ray Hollowell is enforceable.

" 'A guaranty of payment is an absolute and unconditional promise to pay the debt at maturity if not paid by the principal debtor.' " *Epes v. B.E. Waterhouse, LLC*, 221 N.C. App. 422, 425, 728 S.E.2d 390, 393 (2012) (quoting *Jennings Communications Corp. v. PCG of the Golden Strand, Inc.,* 126 N.C. App. 637, 640, 486 S.E.2d 229, 231 (1997)). " 'Under the general rules of contract construction, where an agreement is clear and unambiguous, no genuine issue of material fact exists and summary judgment is appropriate. In contrast, an ambiguity exists in a contract if the language of the contract is fairly and reasonably susceptible to either of the constructions asserted by the parties.' " *Id.* (quoting *Carolina Place Joint Venture,* 145 N.C. App. at 699, 551 S.E.2d at 571). Ray Hollowell's execution of the guaranty was a contractual promise to pay outstanding debts if the principal, here OBKA, failed to do so. The explicit terms of said contract, which were clear and unambiguous and must be construed as such, waived any defenses other than full

payment of the debt. Accordingly, the unenforceability of the obligation by Emerald against OBKA is no defense for Ray Hollowell as guarantor, and the guaranty may be enforced.

Appellants did not challenge at trial, and do not challenge on appeal, the fact that Ray Hollowell signed a guaranty for the debt secured by the note. This created an obligation in contract in accordance with the terms of the guaranty, enforceable even in the absence of the note. There is no genuine issue of material fact that Ray Hollowell owed the debt pursuant to that contractual obligation. Accordingly, the trial court did not err in granting summary judgment in favor of Emerald against Ray Hollowell.

This argument is without merit.

### C. Unconscionability

Lastly, appellants contend that the trial court erred in entering summary judgment in favor of Emerald against Ray Hollowell because the guaranty contained unconscionable provisions.

"Unconscionability is an affirmative defense, and the party asserting it bears the burden of establishing it." *Rite Color Chem. Co. v. Velvet Textile Co.*, 105 N.C. App. 14, 20, 411 S.E.2d 645, 649 (1992).

> For a court to conclude that a contract is unconscionable, the court must determine that the agreement is both substantively and procedurally unconscionable. The question of unconscionability is determined as of the date

the contract was executed. Procedural unconscionability involves bargaining naughtiness in the formation of the contract, such as fraud, coercion, undue influence, misrepresentation, [or] inadequate disclosure. Substantive unconscionability involves an inequality of the bargain that is so manifest as to shock the judgment of a person of common sense, and . . . the terms . . . so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.

*Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 212-13, 652 S.E.2d 701, 712 (2007) (citations and quotation marks omitted).

With respect to procedural unconscionability, at trial, appellants argued as follows:

The courts want to see something called procedural unconscionability, something -- the naughtiness in -- some kind of misbehavior in the formation of a contract, as well as substantive unconscionability, that being the unfairness of the provisions at issue.

I don't know that I can argue to you, outside of requiring Ms. Hollowell to sign, that there was any other misconduct in the formation of the contract, but when you have people as a condition of a loan signing a boilerplate contract that says you waive all acts/omissions of any kind at any time with respect to any matter whatsoever, that it's just so broad that the court should deem such a provision unconscionable.

In essence, at trial, appellants conceded that the only possible evidence of procedural unconscionability was FSB's requirement that Donna Hollowell execute the guaranty as well as Ray Hollowell; the remainder of their argument goes to the

substantive unconscionability of the terms of the guaranty, not procedural unconscionability.

We are reluctant to hold, as appellants would have us hold, that it is *per se* procedurally unconscionable for a lender to require that both members of an LLC execute a guaranty of the LLC's loan obligation. In the absence of other evidence of procedural unconscionability, we hold that, on appeal and before the trial court, appellants have failed to demonstrate procedural unconscionability.

We acknowledge that there is no bright-line rule as to just how much procedural or substantive unconscionability must be shown. What our law establishes conclusively, however, is that some of each is necessary to demonstrate unconscionability. In the absence of *any* procedural unconscionability, it cannot be said that the guaranty agreement was unconscionable. As such, we hold that the trial court did not err in rejecting the unconscionability defense asserted by Ray Hollowell.

This argument is without merit.

## IV. Conclusion

Because Emerald did not acquire the right to enforce the missing note from FSB, the trial court erred in granting summary judgment in favor of Emerald and denying it to OBKA. Because no genuine issue of material fact existed as to Ray Hollowell's contractual obligation for the debt pursuant to the guaranty agreement,

and the agreement was not unconscionable, the trial court did not err in granting summary judgment in favor of Emerald and denying it to Ray Hollowell.

REVERSED IN PART, AFFIRMED IN PART.

Judges STEPHENS and McCULLOUGH concur.