Pure Body Studios Charlotte, LLC v. Crnalic, 2017 NCBC 96.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 674

PURE BODY STUDIOS
CHARLOTTE, LLC,

        Plaintiff,

v.

DINO CRNALIC; PURE BODY
STUDIOS, LLC; DRIVE FITNESS
PRODUCTIONS, LLC; SUKI AKOR,
LLC; and PIN ENTERPRISE, LLC,

        Defendants.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS AND
DEFENDANTS' MOTION TO
TRANSFER VENUE**

1.    **THIS MATTER** is before the Court on Plaintiff Pure Body Studios Charlotte, LLC's ("Plaintiff" or "Pure Body") motion to dismiss and Defendants' motion to transfer venue (collectively, the "Motions"). Having considered the Motions, the briefs, and the arguments of counsel at a hearing on the Motions, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion to dismiss and **DENIES** Defendants' motion to transfer venue.

> *Wyrick Robbins Yates & Ponton LLP, by Paul J. Puryear, Jr. and Lee M. Whitman, for Plaintiff.*
>
> *Womble Carlyle Sandridge & Rice, LLP, by Russ Ferguson, for Defendants.*

Robinson, Judge.

## I.    FACTUAL BACKGROUND

2.    The Court does not make findings of fact on Pure Body's motion to dismiss, but rather only recites those factual allegations of the pleadings that are relevant and necessary to the Court's determination of the motion.

3.    Defendant Dino Crnalic ("Crnalic") and Matt Jordan ("Jordan"), who is not a party to this action, formed Pure Body on or about May 30, 2013.  (Compl. ¶ 14, ECF No. 10; Answer & Countercls. 1, 7, ¶ 14, ECF No. 33.)  Pure Body is a North Carolina limited liability company operating a gym and having its principal place of business in Mecklenburg County, North Carolina.  (Compl. ¶ 2; Answer & Countercls. 5, ¶ 2.)

4.    Pure Body's initial members were Dino Crnalic Investments LLC and Matthew Jordan Investments LLC, (Answer & Countercls. Ex. A, § 3.1), and its initial officers and directors were Crnalic and Jordan, (Answer & Countercls. Ex. A, §§ 5.1, 7.1).  Crnalic was the Chief Executive Officer until August 15, 2016.  (Compl. ¶ 18; Answer & Countercls. 7, ¶ 18.)

5.    On December 1, 2014, Paul Hausman ("Hausman") and Greyhawk Ventures, LLC, which is controlled by Peter von Jess ("von Jess"), became members of Pure Body, and von Jess became a director.  (Compl. ¶ 16; Answer & Countercls. 7, ¶¶ 15–16.)

6.    In March 2016, Pure Body's then-current landlord notified Crnalic that it was terminating Pure Body's lease early.  (Answer & Countercls. 9, ¶ 25.)  The

landlord informed Crnalic that Pure Body was required to move out by December 31, 2016. (Answer & Countercls. 9, ¶ 25.)

7. As a result of the landlord's termination of Pure Body's lease, Crnalic presented Pure Body's board of directors with four possible new locations for the gym. (Answer & Countercls. 3, 9, ¶ 25.) The board ultimately chose a space located at 3609 South Boulevard, Charlotte, North Carolina. (Answer & Countercls. 3, 28, ¶ 38.) In June 2016, Pure Body executed a lease agreement for that space with the owner of the building, 3609 South Blvd, LLC ("3609 South Blvd"). (Answer & Countercls. 3, 28, ¶ 38.) At 3609 South Blvd's requirement, Crnalic personally guaranteed the lease. (Answer & Countercls. 28, ¶¶ 40–41.)

8. Crnalic contends without detail that, at a meeting on August 15, 2016, von Jess made "a host of allegations" about Crnalic, the content of which is not alleged, and threw two folders before Crnalic, one labeled "The Easy Way" and one labeled "The Hard Way." (Answer & Countercls. 4, 14, ¶ 38.) The Easy Way folder contained resignation documents, and the Hard Way Folder contained documents for a lawsuit against Crnalic. (Answer & Countercls. 4, 34, ¶ 74.) Crnalic contends that von Jess told Crnalic that if Crnalic did not sign the resignation documents, von Jess was going to "sue everybody" and "shoot the whole company down." (Answer & Countercls. 33, ¶ 73.) Crnalic alleges that he saw no choice but to sign the resignation documents, and thereby resigned as a director and CEO. (Answer & Countercls. 4, 15, ¶ 41.)

9. In addition to the resignation documents, Crnalic alleges that, at the August 15, 2016 meeting, Crnalic was forced to sign a document titled First

Amendment to Operating Agreement of Pure Body Studios Charlotte LLC (the "First Amendment") and a document reflecting the joint written consent of Pure Body's board and members (the "Joint Written Consent"). (Answer & Countercls. 29, 32−33, Ex. B, Ex. D.)

10. Crnalic alleges that, after he was removed as CEO and a director, Pure Body refused to make lease payments, thereby breaching the lease agreement with 3609 South Blvd. (Answer & Countercls. 9−10, 28.) As a result, 3609 South Blvd sued Crnalic, individually, as the personal guarantor of the lease agreement. (Answer & Countercls. 29, ¶ 43.)

## II. PROCEDURAL HISTORY

11. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

12. Pure Body initiated this action by filing its Complaint on January 19, 2017. (ECF No. 10.)

13. On May 12, 2017, all Defendants filed their answer and their motion to transfer venue (the "Motion to Transfer"), and Crnalic filed his counterclaims against Pure Body. (ECF Nos. 33, 35.) Crnalic asserts the following counterclaims against Pure Body: (1) dissolution pursuant to N.C. Gen. Stat. § 57D-6-01(1) ("First Counterclaim"); (2) dissolution pursuant to N.C. Gen. Stat. § 57D-6-01(4) ("Second Counterclaim"); (3) indemnity for expenses incurred in defending against this action ("Third Counterclaim"); (4) indemnity for expenses incurred in defending against the action brought by 3609 South Blvd ("Fourth Counterclaim"); (5) a declaratory

judgment that the First Amendment is invalid ("Fifth Counterclaim"); (6) a declaratory judgment that a document titled Written Consent of the Members of Pure Body Studios Charlotte LLC is invalid ("Sixth Counterclaim"); (7) a declaratory judgment that the Joint Written Consent is invalid ("Seventh Counterclaim"); (8) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 ("UDTP") ("Eighth Counterclaim"); (9) breach of section 4.2(c) of the Operating Agreement ("Ninth Counterclaim"); (10) breach of section 5.6 of the Operating Agreement ("Tenth Counterclaim"); and (11) a second count for breach of section 5.6 of the Operating Agreement ("Eleventh Counterclaim"). (Answer & Countercls. 24−25, 27−30, 32−36.)

14. This action was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated May 15, 2017, (ECF No. 36), and assigned to the undersigned by order of Chief Business Court Judge James L. Gale dated that same day, (ECF No. 37).

15. On May 26, 2017, Pure Body voluntarily dismissed with prejudice its claims against Jordan. (ECF No. 39.)

16. On June 7, 2017, Pure Body filed its reply to Crnalic's counterclaims. (ECF No. 42.) Pure Body's reply contains a motion to dismiss Crnalic's counterclaims under "Rule 12(b)(1) and/or 12(b)(6) of the North Carolina Rules of Civil Procedure" ("Rule(s)") ("Pure Body's Motion" or "Motion to Dismiss"), which is the subject of this Order and Opinion. (Partial Mot. Dismiss & Answer to Countercl. 1, ECF No. 42.) Pure Body did not file a motion contained in a separate document as required by Rule 7.2 of the General Rules of Practice and Procedure for the North Carolina Business

Court ("BCR"). At the hearing, Defendants' counsel indicated that it did not object to the Court proceeding on Pure Body's Motion despite Pure Body's technical violation of the BCR. Notwithstanding Defendants' consent in this instance, the Court expects the parties to comply with BCR 7.2 throughout the remainder of this litigation. Pure Body's Motion seeks dismissal of the Second, Third, Fourth, Fifth, Seventh, and Eighth Counterclaims, as well as Crnalic's request for punitive damages, pursuant to Rule 12(b)(6). Pure Body's Motion seeks dismissal of Crnalic's Ninth Counterclaim pursuant to Rule 12(b)(1) for lack of standing.

17. On June 27, 2017, Pure Body voluntarily dismissed without prejudice its claims against Adi Crnalic. (ECF No. 50.)

18. The Motions have been fully briefed, and the Court held a hearing on the Motions on August 8, 2017. The Motions are now ripe for resolution.

19. Following oral argument on the Motions, counsel for Defendants moved for, and were granted, permission to withdraw as counsel. (ECF Nos. 57, 59.) As of the issuance of this Order and Opinion, no attorney has appeared on behalf of Defendants.

### III.    LEGAL STANDARD

20. As a preliminary matter, Pure Body's Motion to Dismiss under Rule 12(b)(6) is untimely as it was made in, rather than before, Pure Body's reply to Crnalic's counterclaims. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b) ("A motion making any of [the Rule 12(b)] defenses shall be made *before* pleading if a further pleading is permitted." (emphasis added)); *see also New Friendship Used Clothing Collection, LLC v. Katz,*

2017 NCBC LEXIS 72, at \*17 (N.C. Super. Ct. Aug. 18, 2017) (finding untimely a Rule 12(b)(6) motion filed contemporaneously with defendant's answer). Pursuant to Rule 12(h)(2), however, to the extent that Pure Body's Motion is brought under Rule 12(b)(6), it may be considered as a Rule 12(c) motion for judgment on the pleadings in these circumstances. *New Friendship Used Clothing Collection, LLC*, 2017 NCBC LEXIS 72, at \*24 ("[U]nder Rules 12(b) and 12(h)(2), a post-answer Rule 12(b) motion to dismiss for failure to state a claim may, if appropriate, be considered as a Rule 12(c) motion for judgment on the pleadings."). As a result, the Court will analyze Pure Body's Motion, to the extent it is based on a failure to state a claim upon which relief may be granted, as a motion for judgment on the pleadings pursuant to Rule 12(c).

21. "A motion for judgment on the pleadings [under Rule 12(c)] should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008). On a Rule 12(c) motion, "[t]he movant is held to a strict standard and must show that no material issue of facts exists and that he is clearly entitled to judgment." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). "[T]he court cannot select some of the alleged facts as a basis for granting the motion on the pleadings if other allegations, together with the selected facts, establish material issues of fact." *J. F. Wilkerson Contracting Co. v. Rowland*, 29 N.C. App. 722, 725, 225 S.E.2d 840, 842 (1976). The

Court must read the pleadings in the light most favorable to the nonmoving party, and

> [a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 (citations omitted).

22.     "Judgment on the pleadings is not favored by the law . . . ." *Huss v. Huss*, 31 N.C. App. 463, 466, 230 S.E.2d 159, 162 (1976). The function of Rule 12(c) "is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. "[J]udgment on the pleadings is not appropriate merely because the claimant's case is weak and he is unlikely to prevail on the merits." *Huss*, 31 N.C. App. at 469, 230 S.E.2d at 163. "A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact . . . ." *George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 486, 393 S.E.2d 580, 583 (1990).

23.     Unlike Pure Body's attempt to seek dismissal under Rule 12(b)(6), which the Court analyzes under Rule 12(c), Pure Body's Motion to Dismiss under Rule 12(b)(1) for lack of standing is timely as Rule 12(h)(3) expressly provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." N.C. Gen. Stat. § 1A-1, Rule 12(h)(3); *New Friendship Used Clothing Collection, LLC*, 2017 NCBC

LEXIS 72, at *27 (finding timely a post-answer Rule 12(b)(1) motion to dismiss). Under Rule 12(b)(1), a court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists. *Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009); *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). However, "if the trial court confines its evaluation [of standing] to the pleadings, the court must accept as true the [claimant]'s allegations and construe them in the light most favorable to the [claimant]." *Munger v. State*, 202 N.C. App. 404, 410, 689 S.E.2d 230, 235 (2010); *see also Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002) ("[E]ach element [of standing] must be supported in the same way as any other matter on which the [claimant] bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").

## IV.  PURE BODY'S MOTION UNDER RULE 12(c)

### A.  <u>Second Counterclaim – Judicial Dissolution</u>

24.  Crnalic's Second Counterclaim seeks judicial dissolution pursuant to N.C. Gen. Stat. § 57D-6-01(4), (Answer & Countercls. 25), which provides that an LLC is dissolved upon the entry of a decree of judicial dissolution on the grounds set forth in N.C. Gen. Stat. § 57D-6-02. *See* N.C. Gen. Stat. § 57D-6-01(4). Under section 57D-6-02, a court may dissolve an LLC in a proceeding brought by a member "if it is established that (i) it is not practicable to conduct the LLC's business in conformance with the operating agreement and this Chapter or (ii) liquidation of the LLC is

necessary to protect the rights and interests of the member." N.C. Gen. Stat. § 57D-6-02(2).

25.     Crnalic alleges that he is entitled to dissolution under either statutory ground. Crnalic first alleges that it is not practicable to conduct Pure Body's business in conformance with the Operating Agreement because Pure Body does not own or lease a fitness facility or any fitness equipment and does not have any employees. (Answer & Countercls. 26, ¶ 19.) Second, Crnalic alleges that liquidation is necessary to protect Crnalic's rights and interests. (Answer & Countercls. 26, ¶ 20.)

26.     Crnalic alleges that, since August 15, 2016, he has been completely shut out from Pure Body and has not received any financial information or other information regarding Pure Body's operations. (Answer & Countercls. 26, ¶¶ 22–23.) Crnalic further contends without elaboration that he was told not to visit Pure Body's business location and that he has not been informed that Pure Body sold all or substantially all of its assets, laid off all employees, and closed its gym. (Answer & Countercls. 26, ¶¶ 23–24.) Additionally, Crnalic alleges that he has not been informed that Pure Body terminated its lease with 3609 South Blvd. (Answer & Countercls. 26, ¶ 23.)

27.     With respect to the second statutory ground, Pure Body argues that Crnalic has failed to allege that dissolution is necessary to protect his rights and interests as a member of Pure Body. (Br. Supp. Pl.'s Partial Mot. Dismiss 7, ECF No. 43.1.) Crnalic, relying on *Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E.2d 551 (1983), argues that the Second Counterclaim sufficiently alleges that dissolution is necessary

to protect Crnalic's reasonable expectations. (Resp. Opp'n Mot. Dismiss Countercls. 4–6, ECF No. 51.) In *Meiselman,* our Supreme Court discussed at length a claim for dissolution of a close corporation under the North Carolina Business Corporation Act, which, similar to the North Carolina Limited Liability Company Act (the "Act"), provides for judicial dissolution when "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder[.]" N.C. Gen. Stat. § 55-14-30(2). The Supreme Court in *Meiselman* concluded that dissolution of a close corporation is appropriate "whenever corporate managers or controlling shareholders act in a way that disappoints the minority shareholder's reasonable expectations, even though the acts of the managers or controlling shareholders fall within the literal scope of powers or rights granted them by the corporation act or the corporation's charter or bylaws." *Meiselman,* 309 N.C. at 299, 307 S.E.2d at 563 (quoting O'Neal, *Close Corporations: Existing Legislation and Recommended Reform,* 33 Bus. Law 873, 888 (1978)).

28. Notwithstanding the obvious similarity of the corporate dissolution provision and the corresponding provision under the Act, "the North Carolina appellate courts have not yet addressed whether a claim pursuant to section 57D-6-02(2) is governed by the same principles as a *Meiselman* claim under Chapter 55." *Brady v. Van Vlaanderen,* 2017 NCBC LEXIS 61, at *31–32 (N.C. Super. Ct. July 19, 2017). In the absence of clear guidance from our appellate courts on the factors to be considered in addressing a claim for dissolution of a limited liability company, the Court is reluctant to dismiss Crnalic's dissolution claim at this early stage. The Court

believes that a decision as to the viability of Crnalic's Second Counterclaim should be based on a more fully developed record and concludes that, at the pleading stage, the allegations contained in the Second Counterclaim are sufficient to support a dissolution claim on the ground that liquidation is necessary to protect Crnalic's rights and interests. Therefore, Pure Body's Motion as to Crnalic's Second Counterclaim is denied.

**B.** **Third Counterclaim – Indemnity for Defense of Action**

29. Crnalic's Third Counterclaim seeks indemnity for his costs, fees, and expenses incurred in defending against this action. (Answer & Countercls. 27–28.)

30. With respect to directors and officers, the Operating Agreement provides the following:

> 8.1 Standard of Care. Each Director's and Officer's duty of care in the discharge of the Director's or Officer's duties to [Pure Body] and the Members is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of applicable law. . . .
>
> 8.2 Limitation of Liability. Each Director and Officer shall act in a manner it believes in good faith to be in the best interest of [Pure Body] and with such care as an ordinary prudent person in a similar position would use under similar circumstances. A Director or Officer shall not be liable to [Pure Body], its Members, or any other Director or Officer for any action taken in managing the business or affairs of [Pure Body] if the Director or Officer performs the duty of its office in compliance with the standard contained in this Section and Section 8.1 above. . . . No Director or Officer shall be liable to [Pure Body] or to any Member for any loss or damage sustained by [Pure Body] or any Member except loss or damage resulting from engaging in grossly negligent or reckless conduct, intentional misconduct, a knowing violation of law, a knowing violation of this Operating Agreement, or any transaction from which the Director or Officer derived an improper personal benefit if prohibited by the Act.

8.3 <u>Indemnification</u>. [Pure Body] shall indemnify the Directors and Officers to the fullest extent permitted under the Act, excluding any liability of the Directors or Officers that is not limited pursuant to <u>Section 8.1</u> and <u>Section 8.2</u> above. . . .

(Answer & Countercls. Ex. A, §§ 8.1–8.3.)

31.    Under the Act,

[a]n LLC shall indemnify a person who is wholly successful on the merits or otherwise in the defense of any proceeding to which the person was a party because the person is or was a member, a manager, or other company official if the person also is or was an interest owner at the time to which the claim relates, acting within the person's scope of authority as a manager, member, or other company official against expenses incurred by the person in connection with the proceeding.

N.C. Gen. Stat. § 57D-3-31(a). "Proceeding" is defined as "[a]ny civil or criminal proceeding or other action pending before any court of law or other governmental body or agency or any arbitration proceeding." N.C. Gen. Stat. § 57D-1-03(28).

32.    Pure Body argues that indemnity is only available for costs incurred in defending against claims brought by third parties and, thus, that Crnalic cannot seek indemnity for claims asserted by Pure Body against Crnalic. (Br. Supp. Pl.'s Partial Mot. Dismiss 8; Pl.'s Reply Br. to Def. Crnalic's Resp. Opp'n Mot. Dismiss 2–3, ECF No. 52.)

33.    The Court disagrees. "An [LLC] operating agreement is a contract . . . ." *N.C. State Bar v. Merrell*, 777 S.E.2d 103, 114 (N.C. Ct. App. 2015). The Operating Agreement expressly provides for indemnification to the fullest extent under the Act, except for liability resulting from gross negligence, recklessness, or intentional misconduct. (Answer & Countercls. Ex. A, § 8.3.) The Act provides for indemnification of expenses incurred in connection with "any proceeding," and

"proceeding" is not limited under the Act to actions brought by third parties. N.C. Gen. Stat. § 57D-1-03(28); *see* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 18.02[2] (7th ed. 2016) (discussing the similar definition of "proceeding" in the North Carolina Business Corporation Act and stating "[t]he indemnification provisions relate to any 'proceeding,' . . . whether brought by a third party *or by or on behalf of the corporation (direct or derivative)*" (emphasis added)). Further, the Operating Agreement does not limit the indemnification rights set forth in the Act to actions brought by third parties. *See* N.C. Gen. Stat. § 57D-2-30(a) ("[T]he provisions of this Chapter and common law will apply only to the extent contrary or inconsistent provisions are not made in, or are not otherwise supplanted, varied, disclaimed, or nullified by, the operating agreement.").

34. Under the express terms of the Act and absent contrary language in the Operating Agreement, the Court cannot conclude at the pleading stage that Crnalic's status as a party-defendant in this action brought by Pure Body precludes him from indemnity as a matter of law for expenses incurred in defending against this action.

35. Pure Body further argues that Crnalic's indemnity claim should be dismissed because Pure Body's claims against Crnalic arise out of Crnalic's gross negligence, recklessness, or intentional misconduct, and the Operating Agreement excludes indemnity for liability resulting from such conduct. (Br. Supp. 8−9.) Pure Body's argument, however, asks the Court to assume that Pure Body will prevail on its claims against Crnalic and establish that Crnalic engaged in conduct excluded from the indemnity provision. The allegations supporting Crnalic's Third

Counterclaim for indemnity, taken as true, refute Pure Body's contentions and do not permit the Court to reach such a conclusion. *See Isenhour v. Hutto*, 350 N.C. 601, 604−05, 517 S.E.2d 121, 124 (1999) ("A motion to dismiss pursuant to Rule 12(b)(6) should not be granted unless it appears to a certainty that [the claimant] is entitled to no relief under any state of facts which could be proved in support of the claim." (quotation marks omitted)).

36. Therefore, the Court concludes that, at the pleading stage, Crnalic's allegations are sufficient to state an indemnity claim under the Operating Agreement, and, as such, Pure Body's Motion as to Crnalic's Third Counterclaim is denied.

## C. **Fourth Counterclaim – Indemnity for Third-Party Action**

37. Crnalic's Fourth Counterclaim seeks indemnity for his costs, fees, and expenses incurred in defending against an action brought by 3609 South Blvd against Crnalic on his personal guaranty of Pure Body's lease. (Answer & Countercls. 28−29.) Pure Body contends that this claim should be dismissed because Crnalic's personal guaranty was entered in violation of section 6.2 of the Operating Agreement and, as a result, Crnalic was not acting within the scope of his authority when he guaranteed the lease. (Br. Supp. 9−11; Reply Br. 3−4.)

38. Section 6.2 of the Operating Agreement provides that the officers shall not, without board approval, "[n]egotiate, draft, or enter into any agreement on behalf of [Pure Body] with any Person that would place obligations on [Pure Body] exceeding

$25,000.00, whether such obligations are certain or contingent." (Answer & Countercls. Ex. A, § 6.2(c).)

39.     Pure Body contends that the lease agreement with 3609 South Blvd created a $44,000 debt and, therefore, that Crnalic's personal guaranty implicates section 6.2 of the Operating Agreement. (Br. Supp. 10.) In support of this contention, Pure Body cites to a paragraph of Defendants' answer stating that Defendants "admit that $44,000 owed to the landlord of 3609 South Boulevard was specifically brought before the Board on more than one occasion." (Answer & Countercls. 15–16, ¶ 43c.) The fact that Pure Body owed 3609 South Blvd $44,000 at one point in time does not establish that the personal guaranty, in and of itself, put obligations on Pure Body exceeding $25,000. Neither the lease nor the personal guaranty are included in the pleadings and, as such, the terms thereof, including the duration and the payment amounts, are unknown at this stage.

40.     While discovery may ultimately show that Crnalic was acting outside the scope of his authority in personally guaranteeing the lease, at this early stage of the proceeding, and taking the allegations in the light most favorable to Crnalic, the Court cannot conclude as a matter of law that Crnalic is precluded from indemnity for expenses incurred in defending against the action brought by 3609 South Blvd. Therefore, Pure Body's Motion as to Crnalic's Fourth Counterclaim is denied.

**D.     Fifth Counterclaim – Declaratory Judgment**

41.     Crnalic's Fifth Counterclaim seeks a declaratory judgment that the First Amendment is ineffective. (Answer & Countercls. 29–30.) Crnalic contends that the

First Amendment is ineffective because it was not signed by 100% of the class A and class B membership units as required by the Operating Agreement. (Answer & Countercls. 30, ¶ 52, Ex. B.) Specifically, Crnalic contends that Miodrag Dragich ("Dragich"), Matthew Barley ("Barley"), and Dan Trujillo ("Trujillo") were members of Pure Body and that each failed to sign the First Amendment. (Answer & Countercls. 30, ¶ 52, Ex. B.) Crnalic additionally alleges that he signed the First Amendment under duress. (Answer & Countercls. 30, ¶ 52.)

42. Pure Body argues that Barley and Trujillo are not, and never were, members of Pure Body, and the inclusion of their names as signatories to the First Amendment, as well as in the capitalization table as owners of class A membership units, was error. (Br. Supp. 11−12.) To support this contention, Pure Body attached to its brief in support of its Motion a Second Amendment to the Operating Agreement of Pure Body Studios Charlotte LLC (the "Second Amendment"), which does not contain signature lines for either Barley or Trujillo. (Br. Supp. Ex. 2, ECF No. 54.)

43. In deciding a Rule 12(c) motion, "the trial court looks solely to the pleadings." *N.C. Concrete Finishers, Inc. v. N.C. Farm Bureau Mut. Ins. Co., Inc.*, 202 N.C. App. 334, 336, 688 S.E.2d 534, 535 (2010). Documents attached to and incorporated within a pleading become part of the pleading and, thus, may be considered on a Rule 12(c) motion for judgment on the pleadings. *Bank of Am., N.A. v. Rice*, 780 S.E.2d 873, 882 (N.C. Ct. App. 2015). Additionally, "a court may properly consider documents which are the subject of a [defendant's counterclaim] and to which the [counterclaim] specifically refers even though they are presented by the

[plaintiff]." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007). On the other hand, "[a] document attached to the moving party's pleading may not be considered in connection with a Rule 12(c) motion unless the non-moving party has made admissions regarding the document." *Reese v. Charlotte-Mecklenburg Bd. of Educ.*, 196 N.C. App. 539, 545, 676 S.E.2d 481, 486 (2009).

44. The Second Amendment is not a part of the pleadings. Crnalic's counterclaims do not mention the Second Amendment, and Crnalic has not made any admissions regarding the Second Amendment. Thus, the Court cannot consider the Second Amendment in deciding Pure Body's Motion. As a result, Pure Body's Motion as to the Fifth Counterclaim necessarily fails and its Motion on this ground is denied.

### E.   Seventh Counterclaim – Declaratory Judgment

45. Similar to his Fifth Counterclaim, Crnalic's Seventh Counterclaim seeks a declaratory judgment that the Joint Written Consent is ineffective because it was not signed by Dragich, Barley, or Trujillo as required by the Operating Agreement. (Answer & Countercls. 32–33.) Crnalic additionally alleges that he signed the Joint Written Consent under duress. (Answer & Countercls. 33, ¶ 66.)

46. Pure Body argues that Crnalic did not attach the "final version" of the Joint Written Consent, (Br. Supp. 13), and, further, that the final version, which is attached to Pure Body's brief in support of its Motion, omits Barley and Trujillo as signatories and contains Dragich's signature, (Br. Supp. Ex. 4, ECF No. 43.4), necessarily defeating Crnalic's claim.

47.     The Court, however, is not at liberty to consider Pure Body's evidence on this Motion.  The "final version" is not attached to any pleading.  (*See* Compl.; Answer & Countercls.; Partial Mot. Dismiss & Answer to Countercl.)  Also, the Court cannot determine which "version" of the Joint Written Consent is controlling in the face of the parties' competing proofs under the standard for motions under Rule 12(c).  *See Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004) ("The trial court may consider[] only the pleadings and exhibits which are attached and incorporated into the pleadings in ruling on the motion [under Rule 12(c)].  No evidence is to be heard, and the trial judge is not to consider statements of fact in the briefs of the parties . . . ." (citations and quotation marks omitted)); *Steeves v. Scot. Cty. Bd. of Health*, 152 N.C. App. 400, 405, 567 S.E.2d 817, 821 (2002) ("Judgment on the pleadings is a summary procedure and the judgment is final.  Therefore, each motion under Rule 12(c) must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits.  The movant is held to a strict standard and must show that no material issue of facts exists and that he is clearly entitled to judgment."); *Cash v. State Farm Mut. Auto. Ins. Co.*, 137 N.C. App. 192, 202, 528 S.E.2d 372, 378 (2000) ("Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain." (quotation marks omitted)).

48.    Accordingly, viewing the Seventh Counterclaim's allegations in the light most favorable to Crnalic, the Court concludes that Pure Body's Motion must be denied.

## F.    Eighth Counterclaim – UDTP

49.    Crnalic's Eighth Counterclaim for UDTP is based on the allegation that von Jess engaged in coercive conduct at the August 15, 2016 meeting that forced Crnalic to resign.  (Answer & Countercls. 33−34.)  Pure Body contends that this claim should be dismissed because it is based on allegations that relate solely to Pure Body's internal corporate affairs and, as such, is not "in or affecting commerce" under well-established North Carolina precedent.  (Br. Supp. 14−16; Reply Br. 6−7.)

50.    In order to state a UDTP claim, Crnalic must allege (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused injury to Crnalic.  *Belcher v. Fleetwood Enters., Inc.*, 162 N.C. App. 80, 85, 590 S.E.2d 15, 18 (2004).  "'[C]ommerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b).  As stated by our Supreme Court, "'[b]usiness activities' is a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized."  *Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991).  Section 75-1.1 applies to "(1) interactions between businesses, and (2) interactions between businesses and consumers."  *White v. Thompson*, 364

N.C. 47, 52, 691 S.E.2d 676, 679 (2010). Section 75-1.1 does not apply to a business's internal operations. *Id.* at 53, 691 S.E.2d at 680; *Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at *11 (N.C. Super. Ct. Feb. 8, 2017) ("Acts are not 'in or affecting commerce' if they are restricted to internal corporate matters.").

51. Crnalic argues that the counterclaims allege that von Jess used coercive tactics, which constitute unfair or deceptive conduct, (Resp. Opp'n Mot. Dismiss Countercls. 14); however, "[Crnalic] must first establish that [Pure Body's] conduct was 'in or affecting commerce' before the question of unfairness or deception arises." *Hajmm Co.*, 328 N.C. at 592, 403 S.E.2d at 492. Crnalic alleges that von Jess, a director, called an emergency meeting and improperly forced Crnalic to resign as a director and CEO of Pure Body by threatening to "sue everybody" and "shoot the whole company down." (Answer & Countercls. 33, ¶¶ 70−73.)

52. As such, Crnalic's UDTP claim is based on conduct occurring solely within Pure Body and cannot serve as the basis for a claim under section 75-1.1. *See Wilson v. Blue Ridge Elec. Membership Corp.*, 157 N.C. App. 355, 358, 578 S.E.2d 692, 694 (2003) ("Matters of internal corporate management, such as the manner of selection and qualifications for directors, do not affect commerce as defined by Chapter 75 and our Supreme Court."); *Talisman Software, Sys. & Servs., Inc. v. Atkins*, 2015 NCBC LEXIS 108, at *23 (N.C. Super. Ct. Nov. 18, 2015) (granting plaintiff's motion to dismiss defendant's UDTP claim where the "conduct ar[ose] out of [defendant]'s employment as President and CEO of [plaintiff] and only implicate[d] internal business disputes").

53.     Therefore, the Court concludes that Crnalic's Eighth Counterclaim fails to state a claim for UDTP and, accordingly, Pure Body's Motion as to this claim is granted.

G.     **Punitive Damages**

54.     Pure Body's Motion also seeks dismissal of Crnalic's request for punitive damages on the grounds that Crnalic has not stated a valid underlying claim to support a punitive damages award and the allegations do not satisfy Rule 9(k).  (Br. Supp. 18; Reply Br. 9–10.)

55.     The only reference to punitive damages is in Crnalic's prayer for relief. (Answer & Countercls. 36.)  The pleading does not identify the claims for which Crnalic seeks punitive damages.

56.     Pursuant to N.C. Gen. Stat. § 1D-15(a), punitive damages may be awarded only if Crnalic proves that Pure Body is liable for compensatory damages and that either fraud, malice, or willful or wanton conduct was present and related to the injury for which compensatory damages were awarded.  N.C. Gen. Stat. § 1D-15(a). Punitive damages may not be awarded solely for breach of contract.  *Id.* § 1D-15(d). "Nevertheless, where there is an identifiable tort even though the tort also constitutes, or accompanies, a breach of contract, the tort itself may give rise to a claim for punitive damages."  *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976).  Further, Rule 9(k) states that "the aggravating factor that supports the award of punitive damages shall be averred with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(k).  "It is not sufficient that the party seeking punitive

damages merely states a cause of action and then asserts he is entitled to punitive damages as a result of that claim." *HSG, LLC v. Edge-Works Mfg. Co.*, 2015 NCBC LEXIS 91, at *33 (N.C. Super. Ct. Oct. 5, 2015). "[T]o recover punitive damages, [the pleading] must allege facts or elements showing the aggravating circumstances which would justify the award of punitive damages." *Wiley v. L3 Commc'ns Vertex Aerospace, LLC*, 795 S.E.2d 580, 590 (N.C. Ct. App. 2016) (quotation marks omitted).

57. Crnalic's claims for dissolution (First and Second Counterclaims), indemnity (Third and Fourth Counterclaims), and declaratory judgment (Fifth, Sixth, and Seventh Counterclaims) do not seek compensatory damages and, accordingly, punitive damages may not be awarded for these claims. N.C. Gen. Stat. § 1D-15(a). In addition, as the Court has dismissed Crnalic's claims for UDTP (Eighth Counterclaim) and breach of section 4.2 of the Operating Agreement (Ninth Counterclaim), discussed below, the only remaining claims through which Crnalic could potentially recover compensatory damages are his Tenth and Eleventh Counterclaims for breach of section 5.6 of the Operating Agreement.

58. The Court has reviewed the Tenth and Eleventh Counterclaims in the light most favorable to Crnalic and concludes that they fail to plead any recognizable tort or allege any tortious or aggravated behavior accompanying Pure Body's alleged breach of the Operating Agreement sufficient to permit an award of punitive damages. These counterclaims further fail to allege any aggravating factor that could support a punitive damages award. Therefore, Pure Body's Motion as to Crnalic's request for punitive damages is granted.

## V. PURE BODY'S MOTION UNDER RULE 12(b)(1)

59. Crnalic's Ninth Counterclaim alleges that Pure Body breached section 4.2(c) of the Operating Agreement by disposing of all or substantially all of Pure Body's assets as part of a single transaction or plan without the affirmative vote of members who own more than fifty percent of the membership interests represented by class A and class B membership units. (Answer & Countercls. 34.) Pure Body seeks dismissal of this claim pursuant to Rule 12(b)(1) on the ground that it is a derivative claim that must be brought derivatively on behalf of Pure Body. If Pure Body is right, Crnalic lacks standing to assert this claim directly. (Br. Supp. 16–17; Reply Br. 7–8.)

60. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Neuse River Found., Inc.*, 155 N.C. App. at 113, 574 S.E.2d at 51. It is a well-settled principle of North Carolina law that shareholders of a corporation cannot pursue individual causes of action for wrongs or injuries to the corporation. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997); *Corwin v. British Am. Tobacco PLC*, 796 S.E.2d 324, 338 (N.C. Ct. App. 2016). This same standard applies for purposes of determining whether a member of an LLC can assert an individual, as opposed to a derivative, claim. *Levin v. Jacobson*, 2015 NCBC LEXIS 111, at *14–15 (N.C. Super. Ct. Dec. 7, 2015); *see* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 34.04[5] (7th ed. 2016) ("A derivative action on behalf of an LLC will be governed by essentially the same rules that apply to a derivative action on behalf of a corporation.").

61. There are two exceptions to the general requirement of derivative claims: (1) when there is a special duty between the wrongdoer and the member; and (2) when the member suffered an injury separate and distinct from the injury suffered by the LLC and the other members. *Barger*, 346 N.C. at 658, 488 S.E.2d at 219; *Corwin*, 796 S.E.2d at 338; *Levin*, 2015 NCBC LEXIS 111, at *14–15; *see* Robinson § 34.04[5] ("[W]hether the member must bring the suit individually or on behalf of the LLC turns on whether the alleged injuries were caused directly to the member or are a consequence of breaches of fiduciary duty that harmed the LLC.").

62. For the special duty exception to apply, "the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual"—a duty that was personal to the shareholder and separate and distinct from the duty owed to the corporation. *Barger*, 346 N.C. at 659, 488 S.E.2d at 220. In *Barger*, our Supreme Court set forth an illustrative, non-exclusive list of situations in which a special duty may be found. This non-exhaustive list includes when the wrongdoer induced plaintiff to become a shareholder, the wrongdoer violated his fiduciary duty to the shareholder, the wrongdoer performed individualized services directly for the shareholder, and the wrongdoer undertook to advise shareholders independently of the corporation. *Id.*

63. For the special injury exception to apply, the injury must be peculiar or personal to the shareholder. *Id.* "[A] plaintiff must show that its particular injury was 'separate and distinct from the injury sustained by the other shareholders or the

corporation itself.'" *Raymond James Capital Partners, L.P. v. Hayes*, 789 S.E.2d 695, 702 (N.C. Ct. App. 2016) (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 219).

64. The Court concludes that Crnalic's Ninth Counterclaim seeks to recover for injury suffered by Pure Body: the allegedly improper disposal of all or substantially all of Pure Body's assets, if true, is an injury to Pure Body, not Crnalic. *See Jordan v. Hartness*, 230 N.C. 718, 719, 55 S.E.2d 484, 485 (1949) (concluding that a claim for dissipation of corporate assets belongs to the corporation); *In re Se. Eye Ctr.-Pending Matters*, 2016 NCBC LEXIS 59, at *24 (N.C. Super. Ct. July 22, 2016) (concluding that a claim for wrongful disposition of corporate assets was derivative). Crnalic fails to allege how he suffered a separate and distinct injury from that sustained by Pure Body or the other members as a result of the improper disposal of Pure Body's assets. Further, the contractual duty to obtain the majority vote of the members before disposing of Pure Body's assets is a duty that is equally owed to Pure Body and the other members.

65. Therefore, the Court concludes that Crnalic must bring this claim, if at all, as a derivative claim and, thus, does not have standing to assert an individual claim for breach of section 4.2 of the Operating Agreement. Pure Body's Motion to dismiss Crnalic's Ninth Counterclaim pursuant to Rule 12(b)(1) is granted and the Ninth Counterclaim is dismissed without prejudice. *See Soma Tech., Inc. v. Dalamagas*, 2017 NCBC LEXIS 43, at *29–30 (N.C. Super. Ct. May 11, 2017) (stating a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and, accordingly, is properly dismissed without prejudice).

## VI. MOTION TO TRANSFER

66. Defendants' Motion to Transfer requests that the Court transfer venue in this action from Wake County to Mecklenburg County for the convenience of the witnesses and to promote the ends of justice pursuant to N.C. Gen. Stat. § 1-83(2). (Mot. Transfer Venue 1, ECF No. 35.) "The trial court is given broad discretion when ruling on a motion to change venue for the convenience of witnesses: The trial court may change the place of trial when the convenience of witnesses and the ends of justice would be promoted by the change." *Zetino-Cruz v. Benitez-Zetino*, 791 S.E.2d 100, 105 (N.C. Ct. App. 2016). The Court, in the exercise of its discretion, declines to change the venue for trial at this time. Therefore, Defendants' Motion to Transfer is denied without prejudice to revisiting this issue at a later stage of the proceedings.

## VII. CONCLUSION

67. For the foregoing reasons, the Court **ORDERS** as follows:

A. The Court **DENIES** Pure Body's Motion under Rule 12(c) as to Crnalic's Second, Third, Fourth, Fifth, and Seventh Counterclaims, and **GRANTS** Pure Body's Motion under Rule 12(c) as to Crnalic's Eighth Counterclaim and request for punitive damages. Crnalic's Eighth Counterclaim is dismissed with prejudice.

B. The Court **GRANTS** Pure Body's Motion under Rule 12(b)(1) as to Crnalic's Ninth Counterclaim, and this claim is dismissed without prejudice.

C.    The Court **DENIES** Defendants' Motion to Transfer, without prejudice to Defendants' right to renew the Motion to Transfer at a later stage of these proceedings for good cause shown.

68.    Counsel for Plaintiff is directed to serve a copy of this Order and Opinion on each of the Defendants.  Counsel for Plaintiff is further directed to promptly file with the Court a certificate of service documenting counsel's compliance with the Court's directive.

**SO ORDERED**, this the 18th day of October, 2017.


/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases